IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LOVELL, LOVELL, NEWSOM & ISERN, L.L.P., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| JULIAN LEE BIVINS, II, | § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Lovell, Lovell, Newsom & Isern, L.L.P., Plaintiff in the above-referenced cause, complaining of Julian Lee Bivins, II ("Bivins") Defendant, and files *Plaintiff's Original Complaint*. Plaintiff would show the Court as follows:

## PARTIES

1. Plaintiff, **Lovell, Lovell, Newsom & Isern, L.L.P.** ("LLNI" or "Plaintiff") is a Texas limited liability partnership with its principal place of business located in Amarillo, Potter County, Texas. LLNI is a citizen of the State of Texas.

2. Defendant **Julian Lee Bivins, II** ("Bivins" or "Defendant") is an individual who resides in Scottsdale, Maricopa County, Arizona. Bivins may be served at his residence, 13554 East Columbine Drive, Scottsdale, Arizona 85259. Bivins is a citizen of the State of Arizona.

## JURISDICTION AND VENUE

3. This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

---

4.      This Court has *in personam* jurisdiction over the Defendant because Bivins owns real property in the State of Texas, has granted to Plaintiff security interests in Texas real estate, and is a beneficiary of a Texas trust which owns real property in at least Carson, Crockett, Hansford, Hartley, Hutchinson, Moore, Ochiltree, Oldham, Potter, and Sherman Counties, Texas. Further, Plaintiff's claims against Defendant arise out of Defendant's contacts with the State of Texas, and contracts executed and performable in the State of Texas. Defendant has established continuing systematic and minimum contacts with the State of Texas, and Plaintiff's claims arise out of Defendant's contacts with the State of Texas, such that the exercise of personal jurisdiction over him by this Court will comport with the due process clauses of the Federal and State Constitutions. Therefore, this court has *in personam* jurisdiction over Defendant in this matter.

5.      Venue of this action is proper in the Amarillo Division of the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(2), because (1) this action involves an interest in real and mineral properties located in counties within the Amarillo Division of the Northern District of Texas, including Carson, Hansford, Hartley, Hutchinson, Moore, Ochiltree, Oldham, Potter, and Sherman Counties, Texas, (2) Plaintiff's claims arise out of contracts executed and performable in the Amarillo Division of the Northern District of Texas, and (3) all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in counties within the Amarillo Division of the Northern District of Texas, including the above-listed Texas counties in said Division.

6.      On November 12, 2010, Oliver W. Bivins ("Oliver") conveyed certain real property interests to his son, Julian Bivins. The property conveyed included mineral interests in Carson, Crockett, Hansford, Hartley, Hutchinson, Moore, Ochiltree, Oldham, Potter and Sherman Counties of Texas, as well as surface estates in Potter and Oldham Counties of Texas.

## BACKGROUND AND RELATIONSHIP OF PARTIES

7.      Oliver is now mentally incapacitated. He is the father of Defendant.  Curtis Rogers ("Rogers") was appointed as guardian of the estate of Oliver W. Bivins by orders of the Circuit Court of the Fifteenth Judicial Circuit for Palm Beach County, Florida, in Cause No. 50244GA0000006xxxxSB ("*In re: Oliver-Florida*"), and also by the County Court of Potter County, Texas in a Texas ancillary proceeding ("*In re: Oliver-Texas*").

8.      On August 24, 2011, Plaintiff was contacted by Kerry Knorpp, Julian Bivins' agent and representative. Kerry Knorpp was seeking to arrange for the engagement of LLNI on behalf of Julian Bivins in the matters of Florida guardianship claims against Julian regarding the November 12, 2010 transactions. Julian Bivins engaged LLNI.  In order to avoid suit first being filed in Florida, Kerry Knorpp and Julian Bivins urged LLNI to quickly file suit in Texas. At the request and urging of Kerry Knorpp and Julian Bivins, in order to protect Julian Bivins' legal interests, LLNI did so.  Julian Bivins and Kerry Knorpp assured LLNI that it would be paid for its services and expenses, and that a written agreement would be reached.

9.      Between August 24, 2011 and February 29, 2012, many discussions were had between LLNI, on the one hand, and Julian Bivins and Kerry Knorpp, on the other hand, regarding Julian Bivins' preferred terms for an engagement agreement with LLNI.  LLNI drafted several alternative fee agreements from which Julian Bivins, Kerry Knorpp, and Julian Bivins' independent lawyer, Jon Oden, could choose. Julian Bivins, Kerry Knorpp and Jon Oden all had comments, requests and suggestions regarding the terms of these perspective fee agreements.

10.     On or about February 29, 2012, Julian Bivins finally elected which fee agreement he wished to proceed under. Julian Bivins was independently counseled and advised about the matter of the fee agreement by his independent attorney, Jon Oden, and by his advisor Kerry Knorpp. The delay in obtaining a written fee agreement between LLNI and Julian Bivins

between August 24, 2011 and February 29, 2012 was due to Julian Bivins' inability to make up his mind among the various alternatives offered to him.

11.     After Julian had been threatened with suit in Florida, on September 9, 2011, at the request and urging of Kerry Knorpp and Julian Bivins, LLNI filed a declaratory judgment action for Bivins and against Oliver Bivins, by and through Oliver Bivins' Florida guardian, Curtis Rogers.   This petition *Bivins v. Rogers*, which sought a judicial determination affirming the validity of the November 12, 2010 conveyances by Oliver to Julian Bivins, was filed by LLNI in the 222nd District Court of Oldham County in Cause No. 0CI-11I-040.   This filing established that the *Bivins v. Rogers* claim would proceed in Texas, rather than in Florida.   On September 22, 2011, Curtis Rogers, as guardian for Oliver Bivins, filed suit on essentially the same factual and legal issues as *Bivins v. Rogers* in the United States District Court for the Northern District of Texas in Cause No. 2:11-cv-00228-J; *Rogers v. Bivins*.   On October 3, 2011, Curtis Rogers filed a Notice of Removal in the 222nd District Court of Oldham County Cause No. 0CI-11I-040, *Bivins v. Rogers,* and removed *Bivins v. Rogers* to this Court, where it was filed as Cause No. 2:11-cv-00236-J.   By agreed order dated October 20, 2011, by this Court, Cause No. 2:11-cv-00228-J and Cause No. 2:11-cv-00236-J were consolidated into Cause No. 2:11-cv-00236-J.

12.     As guardian of the estate of Oliver, Rogers instituted his suit against Defendant on several grounds, seeking to void those November 12, 2010 transfers of property Oliver made to Defendant ("*Rogers v. Bivins*").   Among the grounds asserted by Rogers in *Rogers v. Bivins* was his claim that on November 12, 2010, Oliver lacked mental capacity to make such transfers to Defendant.   Rogers (Oliver) was represented in the *Rogers v. Bivins* litigation by Joe Hayes and Brian Heinrich of Templeton, Smithee, Hayes, Heinrich & Russell.   Defendant was represented in the consolidated litigation by John Lovell and Kevin Isern of Lovell, Lovell, Newsom & Isern,

L.L.P.   LLNI also represented Defendant in the Texas guardianship proceeding, *In re: Oliver Bivins– Texas*.

13.     Julian Bivins made payments to LLNI for a time, but then fell into default.  LLNI insisted that, in order for it to continue to represent Julian, it would have to be paid, and its unpaid fees and expenses would have to be secured.  On or about January 11, 2013, in order to induce LLNI to continue to represent him, and in order to secure the fees and expenses he had incurred, and which were continuing to accrue, in *Rogers v. Bivins* and *In re: Oliver Bivins – Texas,* and in order to induce LLNI to continue to represent Bivins while Bivins was not paying LLNI the contracted fees and expenses, and as a ratification of his contract of employment of LLNI, on or about January 11, 2013, after private consultations with his independent attorney, Jon Oden, and after receiving drafting advice and recommendations from his private attorney, Jon Oden, Bivins executed and delivered to LLNI a Deed of Trust and a Security Agreement in favor of Lovell, Lovell, Newsom & Isern, L.L.P.   After receiving private advice and counsel from attorney Jon Oden and from Kerry Knorpp, Julian Bivins signed such documents before a notary public on January 11, 2013.  The effective date of the Deed of Trust is January 1, 2012. *See* Exhibit "A."[1]  The Deed of Trust conveyed to LLNI a security interest in the following:

> If not sooner paid, Secured Party shall receive 65% of the Pioneer bonus money[2], now held in suspense by Pioneer Natural Resources, up to the full amount owed by Debtor to Secured Party.  Debtor may use 35% of the Pioneer bonus money to pay income taxes on such bonus money.  If Debtor still owes Secured Party after Secured Party has received the 65% of the Pioneer bonus money, Secured Party shall receive 35% of all bonus money and royalty payable to Debtor under collateral categories B and C in the Security Agreement of even date herewith, until Secured Party is paid in full.

The "property (including any improvements) identified in the Deed of Trust is as follows:

---

[1] A true and correct file-marked and recorded copy of the Deed of Trust is attached hereto as Exhibit "A", and is incorporated herein.

[2]  The Pioneer bonus money totaled $687,379.45.

All that property described in the November 12, 2010 Mineral Deed from Oliver W. Bivins to Julian Lee Bivins, II, recorded at Vol. 125, P. 392 of the Records of Hartley County, Texas (and also recorded in Carson, Crockett, Hansford, Hutchinson, Moore, Ochiltree, Oldham, Parmer, Potter, and Sherman Counties) and all royalties and bonus paid from, **or as a result of**, the Correction Mineral Deed, signed January 3, 2011 from Oliver W. Bivins to Julian Lee Bivins, II, recorded at Vol. 4285, P. 497 of the Official Public Records of Potter County, Texas (and also recorded in Carson, Crockett, Hansford, Hartley, Hutchinson, Moore, Ochiltree, Oldham, Parmer, and Sherman Counties). The Property does not include the executive rights associated with the above-described mineral interests.

Under the "Other Exceptions to Conveyances and Warranty" provision of the Deed of Trust, Grantor Julian Bivins said "None". Under the "General Provisions", Paragraph 7, Julian Bivins agreed as follows, emphasis added:

> **Grantor assigns to Beneficiary, as collateral, and not absolutely, but subject to the terms of payment,** *all present and future royalty, bonus and other income and receipts from the Property.* **This assignment shall become absolute upon default by the Grantor in the performance of the Obligation hereby secured without further action by Beneficiary other than to give written notice to the Grantor of such default.**

Julian Bivins further agreed as follows in said Paragraph 7, emphasis added:

> **If Grantor defaults in payment of the Obligation[3] or performance of this Deed of Trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may collect all royalty, bonus and other income accruing from the Property to Debtor's interest.**

Julian Bivins further agreed as follows in said Paragraph 7, emphasis added:

> **Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the Property.** Beneficiary shall apply all royalty, bonus and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's duties under the Obligation and this Deed of Trust in the order determined by Beneficiary.

Under the "General Provisions, Paragraph 16, Julian Bivins agreed as follows:

> Grantor agrees to pay reasonable attorney's fees, trustee's fees, and reasonable or necessary court costs and other costs of enforcing

---

[3] The "Obligation" was defined to be what Julian Bivins owed under the fee agreement. See p. 8, *infra.*

Beneficiary's rights under this Deed of Trust if this Deed of Trust is placed in the hands of an attorney for enforcement.

14.     LLNI subsequently recorded the Deed of Trust in the following Texas counties:

Hartley, Carson, Crockett, Hansford, Hutchinson, Moore, Ochiltree, Oldham, Parmer, Potter, and

Sherman.   *See* Exhibit "A" incorporated herein.   The Security Agreement was signed and

notarized on January 11, 2013.   The effective date of the Security Agreement is also January 1,

2012 (See Ex. B)[4].   The security interest of LLNI was perfected by filing a U.C.C. Financing

Statement with the Secretary of State of Texas, and with the Secretary of State of Arizona.   A

true and correct copy of the filed U.C.C. Financing Statements is attached hereto as Exhibit "L".

15.     The Security Agreement granted LLNI a Security interest in the following:

The "Collateral, including all accessions" defined as follows (emphasis added):

"A.     Debtor's interest in the Pioneer bonus money, currently held in suspense by Pioneer.

B.      All royalties and bonus paid from, **or as a result of**, the interests conveyed to Debtor in the November 12, 2010 Mineral Deed from Oliver W. Bivins to Julian Lee Bivins, II, recorded at Vol. 125, P. 392 of the Records of Hartley County, Texas (and also recorded in Carson, Crockett, Hansford, Hutchinson, Moore, Ochiltree, Oldham, Parmer, Potter, and Sherman Counties).   **This grant includes after acquired title in the described real estate.**   This grant does not include executive rights.

C.      All royalties and bonus paid from, **or as a result of**, the interests conveyed to Debtor in the Correction Mineral Deed, signed January 3, 2011 from Oliver W. Bivins to Julian Lee Bivins, II, recorded at Vol. 4285, P. 497 of the Official Public Records of Potter County, Texas (and also recorded in Carson, Crockett, Hansford, Hartley, Hutchinson, Moore, Ochiltree, Oldham, Parmer, and Sherman Counties).   **This grant includes after acquired title in the described real estate.**   This grant does not include executive rights.

D.      All debtor's right, title and interest in **all claims, contract rights and causes of action asserted in Cause No. 2:11-cv-00236-J**; Julian Lee Bivins, II v. Oliver Bivins, by and through his Florida Guardian, Curtis

---

[4] A true and correct copy of the Security Agreement is attached hereto as Exhibit "B", and is incorporated herein.

Rogers, pending in the United States District Court for the Northern District of Texas, Amarillo Division."

The Collateral also includes proceeds of the above.

The "Obligation" stated in the Security Agreement was as follows:

"Amounts owed by Debtor to Secured Party under the September 1, 2011 Fee Agreement regarding Cause No. 2:11-cv-00236-J; *Julian Bivins v. Oliver Bivins, by and through his Florida Guardian, Curtis Rogers*, in the United States District Court for the Northern District of Texas, Amarillo Division; and Cause No. 477; *In re: Guardianship of The Estate of Oliver Bivins, Ward*; In the Potter County Court at Law #1 in and for Potter County, Texas; and in Case No. 502011GA 000006XXXXSB, In Re: Guardianship of Oliver Bivins, In the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida."

The "terms of payment" stated in the Security Agreement were as follows:

"If not sooner paid, Secured Party shall receive 65% of the Pioneer bonus money, up to the full amount owed by Debtor to Secured Party.  Debtor may use 35% of the Pioneer bonus money to pay income taxes on such bonus money.  If Debtor still owes Secured Party after Secured Party has received the 65% of the Pioneer bonus money, Secured Party shall receive 35% of all bonus money and royalty payable to Debtor under collateral categories B and C above, until Secured Party is paid in full."

The "amount" stated in the Security Agreement, in pertinent part, was as follows:

"$493,601.14, and additional fees and expenses incurred and accruing on and after October 31, 2012."

In the "Debtor's Representations Concerning Location of Collateral" in the Security Agreement,

Julian Bivins agreed as follows:

"Subject to the terms of this agreement, Debtor grants to Secured Party a security interest in the Collateral **and all its proceeds** to secure payment and performance of Debtor's Obligation in this Security Agreement and all renewals, extensions, and additional fee and expense obligations to Secured Party earned or incurred after October 31, 2012."

In the "Debtor's Covenants", Paragraph 1 of the Security Agreement, Julian Bivins agreed as

follows:

"Secured Party's Costs.  In addition to the amount of the Obligation, Debtor will pay all reasonable expenses incurred by Secured Party in

obtaining, preserving, perfecting, defending, and enforcing this security interest in the Collateral and in collecting or enforcing the Obligation. Expenses for which Debtor is liable include, but are not limited to, taxes, assessments, reasonable attorney's fees, and other reasonable legal expenses incurred in perfecting and collecting payment on the Obligation. These expenses will bear interest from the dates due at the rate stated herein. Expenses and interest will be part of the Obligation and will be recoverable as such in all respects."

In the "Rights and Remedies of Secured Party" of the Security Agreement, Julian Bivins agreed that if he defaulted, LLNI may "take control of any proceeds of the Collateral."

16.     By Agreement dated February 26, 2013 ("Settlement Agreement"), the Texas litigation between Rogers and Bivins in both federal court and in the Potter County court was settled, which settlement was approved in the federal court case of *Rogers v. Bivins* involving Oliver, in Oliver's guardianship proceedings, and in Texas, and in Florida.[5]

17.     Pursuant to the terms of the Settlement Agreement, Julian and Oliver – (Oliver acting through Rogers as his guardian) – created and funded the Oliver W. Bivins Management Trust ("Bivins Trust"). In order to create that Trust, Defendant transferred the disputed assets to the Trust, or agreed that such assets be transferred to the Trust.[6] Because the Bivins Trust was created by Defendant, and for Defendant's benefit, as part of a settlement and because Defendant funded the Trust with assets held by him, the Bivins Trust is self-funded as to Defendant's beneficial interests, both the interest now paying him money as a beneficiary of the Trust, and the additional funds he will receive after the death of Oliver, as the primary beneficiary of the Bivins Trust which will occur upon the death of Oliver. Therefore, as a self-funded trust,

---

[5] A true and correct copy of the Agreed Order Approving Settlement Agreement signed and entered by this Court on February 28, 2013 is attached hereto as Exhibit "C", and is incorporated herein. A true and correct copy of the Order Approving Compromise Settlement Agreement by the Potter County Court on March 21, 2013, with the exhibits to such Order, is attached hereto as Exhibit "D", and is incorporated herein.

[6] A true and correct copy of the Oliver W. Bivins Management Trust Agreement is attached hereto as Exhibit "E", and is incorporated herein.

Defendant's interest in the Bivins Trust and its assets are not protected from the creditors of Defendant, to wit: LLNI.

18.     The Bivins Trust, which was created by the settlement of claims between Julian Bivins and Oliver Bivins' guardian, is the owner of certain mineral interests located in Carson, Crockett, Hansford, Hartley, Hutchinson, Moore, Ochiltree, Oldham, Potter, Sherman and Upton Counties in Texas, as more particularly described in the Mineral Deed (the "Deed")[7] dated November 12, 2010 recorded as follows:

| County | Instrument Number | Volume | Page |
|---|---|---|---|
| Hartley | 99259 | 125 | 392 |

19.     On or about January 3, 2011, a Correction Mineral Deed ("Correction Deed")[8] dated January 3, 2011 was executed by Oliver's attorney-in-fact to correct the omitted descriptions of Lands that were intended by Oliver to be included in that certain Mineral Deed dated and executed by Oliver on November 12, 2010 and recorded as follows:

| County | Instrument Number | Volume | Page |
|---|---|---|---|
| Carson | 2011-00000019 | | |
| Crockett | 15763 | 737 | 773 |
| Hansford | 77582 | 377 | 227 |
| Hartley | 99287 | 125 | 549 |
| Hutchinson | 78237 | 1641 | 150 |
| Moore | 175999 | 696 | 680 |
| Ochiltree | 93901 | 731 | 383 |
| Oldham | | 1207 | 244 |
| Potter | 1187667 | 4285 | 497 |

---

[7] A true and correct copy of the Mineral Deed dated November 12, 2010 is attached hereto as Exhibit "F" and incorporated by reference as if fully set forth herein.

[8] A true and correct copy of the Correction Mineral Deed dated January 3, 2011 is attached hereto as Exhibit "G" and incorporated by reference as if fully set forth herein.

| County | Instrument Number | Volume | Page |
|---|---|---|---|
| Sherman | 23083 | 295 | 381 |
| Upton | 151389 | 851 | 652 |

20.     Under the Security Agreement and Deed of Trust, Bivins granted to LLNI liens upon the Mineral Properties, and their proceeds, including Julian's after-acquired title in the Mineral Properties, proceeds thereof, and in the Bivins Trust.  He further granted LLNI a security interest, and equitable rights as to "all of [Julian's] right, title and interest in all claims, contract rights, and causes of action asserted [in the federal court suit against Oliver's Guardian]" "including all accessions".  (*See* Exhibit "B", P. 1).

## DECLARATORY JUDGMENT

21.     LLNI seeks a declaratory judgment in this case declaring and determining the following:

a)      Bivins executed his fee agreement with LLNI after private consultation and input from one or more independent attorneys;

b)      Bivins' debt to LLNI is in default, past due, and fully due and owing;

c)      Bivins' legal and beneficial interest in the Bivins Trust, all its assets, and all proceeds thereof, are subject to the Deed of Trust and Security Agreement he granted in favor of LLNI;

d)      As to Bivins' interest in the Bivins Trust and its assets,[9] LLNI has a prior and perfected first lien.

e)      Under the terms of Bivins' Deed of Trust and Security Agreement in favor of LLNI, LLNI is now entitled to receive all payments and distributions out of the Bivins Trust attributable to Bivins' beneficial and legal interest in the Bivins Trust, and its assets and proceeds thereof;

f)      In the Security Agreement, Julian Bivins granted to LLNI a lien in a specific fund: the $687,379.45   in suspended bonus money from Pioneer;

---

[9] LLNI recognizes the priority of the title of Herring Bank Trustee, as set out in the Agreed Order in Cause No. 101819-B, dated March 28, 2014.

g)     After the settlement, Julian Bivins took all the Pioneer bonus money, converting LLNI's interest in that specific fund;

h)     After privately receiving independent legal advice and consultation, Bivins ratified his contract with LLNI through the execution of the subject Deed of Trust and Security Agreement;

i)     Bivins induced LLNI to provide legal services and expenses by his execution and delivery of the Deed of Trust and Security Agreement;

j)     Bivins' debt to LLNI is an account stated;

k)     In the Deed of Trust and Security Agreement, Julian Bivins admitted and agreed that as of October 31, 2012, he owed LLNI $493,601.14, plus fees and expenses accruing thereafter;

l)     A declaration that as to Bivins' legal and beneficial interests in the Bivins Trust, and its assets and proceeds, such Trust is self-funded by Julian Bivins as part of the settlement agreement of *Rogers v. Bivins* and *In re: Bivins-Texas*, and therefore fails as a spendthrift trust, and thereby is subject to claims of the creditors of Julian Bivins, to wit:  LLNI;

m)     Bivins has received and kept the benefits of legal services and expenses which he obtained through the inducement of the Security Agreement and Deed of Trust;

n)     LLNI's liens extend to all after-acquired title, rights, interests and benefits of Bivins;

o)     LLNI has a perfected security interest and lien as to all royalty, bonus, and other income and receipts from the property described in its Deed of Trust and Security Agreement, and proceeds of such property, as to Julian Bivins' beneficial and legal interest in said properties and proceeds now held in the Bivins Trust, or held by Bivins; and

p)     LLNI is entitled to foreclose its lien and is entitled to delivery and possession of all royalty, bonus, and other income and receipts from the property described in its Deed of Trust and Security Agreement, and proceeds of such property, otherwise payable to Julian Bivins from the Bivins Trust.

## BREACH OF CONTRACTS, SUIT FOR DEBT, SUIT FOR ACCOUNT STATED

22.     After private consultation with his independent attorney, Bivins contracted for legal services with LLNI.  A true and correct copy of the Attorney's Employment Agreement, dated September 1, 2011, is attached hereto as Exhibit H and incorporated herein by reference. In pertinent part, Bivins contracted to pay LLNI for attorney fees, costs, and expenses incurred in representation of Bivins regarding lawsuits pertaining to a durable power of attorney and deeds to Bivins from his father as to Texas properties and matters regarding a Texas guardianship.  The terms and provisions of the employment contract are set forth in the Attorney's Employment Agreement, and are incorporated herein by reference.

23.     In further support of, and ratification of, the Attorney's Employment Agreement, on or about January 11, 2013, Bivins executed the Deed of Trust referenced in Paragraph 13 of this Complaint.  Bivins also executed a Security Agreement in further support of, and ratification of, the Attorney's Employment Agreement.  (See Paragraph 13 of this Complaint).  The terms and provisions of the Security Agreement are set forth in the Security Agreement and are incorporated herein by reference.

24.     Pursuant to the terms of the Attorney's Employment Agreement, the Deed of Trust, and the Security Agreement, LLNI performed legal services and incurred attorneys fees, costs, and expenses on behalf of Bivins.

25.     The sums due for legal services performed by LLNI for Bivins is an account stated.  In support of the account stated, Plaintiff incorporates herein by reference the Affidavit of John H. Lovell attached as Exhibit I.

26.     All conditions precedent have been performed or have occurred.

27.     LLNI has fully performed its obligations under the contracts with Bivins.  An overview of services performed for Bivins, and benefits received by Bivins of such services, is included in the Affidavit of John H. Lovell referenced in Paragraph 25.

28.     Bivins breached his fee agreement when he failed to pay, and refuses to pay, for services rendered and expenses advanced after his last payment in May of 2012, as outlined in the Affidavit of John H. Lovell.   Further, Bivins breached the Deed of Trust and Security Agreement by failing to direct Pioneer Natural Resources to pay sums to LLNI as promised and agreed in the Deed of Trust and, instead, Bivins retained 100% of the sums payable from Pioneer Natural Resources, thereby converting LLNI's collateral.

29.     By letter dated January 31, 2014 from John Lovell and LLNI to Herring Bank and to counsel of record for Julian Bivins, Bart Pruitt, LLNI declared that Bivins is in default on his financial obligations to LLNI and under the Deed of Trust and Security Agreement in favor of LLNI.  LLNI demanded payment of sums due and owing.  A true and correct copy of the January 31, 2014 letter is attached hereto as Exhibit "J", and incorporated herein. Further, by letter dated February 11, 2014 from Tom Riney, counsel for Plaintiff, Defendant, by and through record counsel was notified of Bivins' default under the contracts, and Plaintiff demanded payment and performance.   A true and correct copy of the February 11, 2014 letter is attached hereto as Exhibit "K", and incorporated herein.

30.     Despite being presented the monthly billings from LLNI, and being presented demands for payment, Bivins has failed to pay sums due and owing to LLNI, is in default, and has breached his contracts with LLNI.

31.     As a result of Bivins' breaches of contract, including breach of the Attorneys' Employment Agreement, and breach of contract and default under the Deed of Trust and Security Agreement, as set out in the preceding paragraphs and in the Affidavit of John H.

Lovell, Plaintiff has sustained damages and has lost the benefits expected to be received from the contracts if Bivins had performed as promised.  The damages to LLNI are stated in the Affidavit of John H. Lovell which is incorporated herein.

32.     In addition to its actual damages and lawful interest, LLNI is entitled to recover its reasonable attorney's fees because this is a claim on a written contract under Texas Civil Practice & Remedies Code § 38.001.  Plaintiff perfected its right to fees under this statute and, under its contracts with Bivins, by presenting its claim for payment on the contracts to Bivins and to his counsel of record.  More than 30 days have elapsed since the demand for payment was received by Bivins' counsel of record, Bivins has continued to refuse to pay, and payment for the just amount owed has not been tendered by Bivins.  As a result, Plaintiff has been required to retain the services of counsel, Tom Riney and his firm, to prosecute this action.  LLNI prays that, after granting LLNI the relief sought in the Complaint, that LLNI have an opportunity to present evidence of the attorney's fees and costs LLNI has incurred in enforcing these agreements, and LLNI seeks further judgment against Bivins for such sums incurred in enforcement of these agreements.

### CONVERSION OF COLLATERAL

33.     Plaintiff incorporates herein Paragraphs 1-32 of Plaintiff's Complaint.

34.     Plaintiff has a right to immediate possession of 65% of the Pioneer bonus money that Bivins received from Pioneer Natural Resources on and after January 11, 2013 ("Pioneer Bonus Money"), which was collateral that Bivins agreed to pay to Plaintiff in the Deed of Trust in favor of LLNI.

35.     The Pioneer Bonus Money is personal property, in which LLNI has a perfected security interest.

36.     After January 11, 2013, Defendant has wrongfully exercised and continues to wrongfully exercise dominion and control of the personal property in which LLNI holds a perfected security interest, the Pioneer Bonus Money.

37.     The conversion, and continued conversion, of the Pioneer Bonus Money by Defendant after January 11, 2013 was, and is, a proximate cause and/or producing cause of damages to Plaintiff.

38.     The damages caused to Plaintiff are in excess of the jurisdictional limits of this Court.

## ENFORCEMENT OF LIEN AND FORECLOSURE

39.     Plaintiff incorporates herein Paragraphs 1-38 of Plaintiff's Complaint.

40.     Pursuant to the Deed of Trust and the Security Agreement, Plaintiff was granted a lien upon 1) Defendant's interest in the Pioneer Bonus Money, 2) all royalties and bonus paid from, or as a result of, real property and interests described in the November 12, 2010 Mineral Deed, including after-acquired title, 3) all royalties and bonus paid from, or as a result of, real property and interests described in the Correction Mineral Deed, including after-acquired title, and 4) all proceeds of the items and interests listed above.  Therefore, Plaintiff has a lien to secure performance by Defendant of Defendant's obligations under the Deed of Trust and Security Agreement, (which grant liens to enforce performance of the fee agreement) including a security interest in all the collateral.  Such lien and security interest expressly applies to Defendant's real property interests, bonuses, and royalties owned, or thereafter acquired or received, by Defendant, including Defendant's interest in royalties paid for oil and gas extracted and sold from the subject real estate.

41.     To perfect Plaintiff's lien, Plaintiff has filed, with the Texas Secretary of State and the Arizona Secretary of State, a UCC 1 Financing Statement, in accordance with the Deed of Trust and Security Agreement.

42.     Plaintiff has previously demanded that Defendant comply with Defendant's obligations to deliver the Pioneer Bonus Money, and the bonus and royalties described above. But, Defendant has wholly failed to comply with all demands made and continues to possess, transfer and spend the Pioneer Bonus Money, and to claim and/or possess the bonuses and royalties paid to him from the subject properties.  Further, Plaintiff has notified Defendant that Defendant is in default under the parties' agreements.  Further, Plaintiff has notified Defendant of the actions to be taken to cure the default.  Despite all demands and notices, Defendant has failed to comply and failed to cure his default.

43.     Defendant hereby sues to enforce and foreclose its lien upon 1) Defendant's interest in the Pioneer Bonus Money, 2) all royalties and bonus paid from, or as a result of, real property and interests described in the November 12, 2010 Mineral Deed, including after-acquired title, and 3) all royalties and bonus paid from, or as a result of, real property and interests described in the Correction Mineral Deed, including after-acquired title, and to obtain a judgment against Defendant to enforce Plaintiff's rights as a secured party under the Deed of Trust and Security Agreement.

44.     As a secured party under the Deed of Trust and Security Agreement, Plaintiff seeks reasonable attorney's fees, court costs, and costs of collection.

45.     As a secured party under the Deed of Trust and Security Agreement, Plaintiff seeks enforcement and foreclosure of Plaintiff's lien.

## COLLECTION OF JUDGMENT THROUGH COURT PROCEEDING

46.     Once LLNI becomes a judgment creditor of Julian Bivins, LLNI is entitled to aid from this Court through injunction or other means, in order to reach property to obtain satisfaction on the judgment as to that property which cannot readily be attached or levied upon by ordinary legal process and is not exempt from attachment, execution or seizure for satisfaction of liabilities.

47.     LLNI prays that the Court order Julian Bivins as judgment debtor to turn over all non-exempt property that is in his possession or subject to debtor's control, sufficient to pay in full the judgment to be entered against him, together with all documents or records related to the property, to a designated sheriff or constable for execution, or otherwise apply non-exempt property to the satisfaction of LLNI's judgment.

48.     In the alternative, LLNI prays that the court appoint a receiver with authority to take possession of the debtor's non-exempt property and proceeds of the Oliver Bivins Trust attributable to Julian Bivins, and either sell such property or pay the proceeds to LLNI to the extent required to satisfy LLNI's judgment.

49.     Pursuant to Tex. Civ. Prac. & Rem. Code §31.002, LLNI will be additionally entitled to recover its reasonable costs of enforcement and collection of the judgment entered in this cause, including LLNI's additional reasonable and necessary attorney's fees.

50.     LLNI also seeks an order of this Court requiring the turnover of non-exempt property of Julian Bivins.

## FRAUDULENT TRANSFER

51.     In executing and delivering the Security Agreement, Julian Bivins gave LLNI a perfected security interest in the $687,379.45 Pioneer bonus and its proceeds. Even though LLNI had a perfected security interest in these specific funds, upon settlement of *Bivins v. Rogers*,

Julian Bivins took all those funds and has refused to acknowledge or pay any portion thereof to LLNI. Julian Bivins has not disclosed the location or transferee of such funds. Julian Bivins received and transferred the $687,379.45 Pioneer bonus money fund with the actual intent to hinder, delay or defraud LLNI, a secured creditor.

52.    At this time, without further discovery, LLNI is not yet informed as to the location or transferees of such fund, nor the consideration, if any, received by Julian Bivins for such converted collateral of LLNI.

53.    Pursuant to Tex. Bus. & Comm. Code §24.001, et seq., LLNI seeks a judgment against Julian Bivins and all transferees of such converted collateral, or any other property transferred by Julian Bivins with the intent to hinder, delay or defraud LLNI, or which has been transferred for inadequate consideration.

54.    Pursuant to Tex. Bus. & Comm. Code §24.009, LLNI seeks judgment against Julian Bivins and all transferees of such funds, as well as all of LLNI's reasonable and necessary attorney's fees, costs of court, and appropriate injunctive relief.

55.    Pursuant to Tex. Bus. & Comm. Code §24.008, LLNI seeks all appropriate writs of attachment and sequestration, and writs of execution, against all assets fraudulently transferred, and all appropriate injunctive relief.

## **PRAYER**

56.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant answer this Complaint filed against him, and LLNI have and recover a judgment against Julian Lee Bivins, II as follows:

   a.   Subject to the title priority of Herring Bank, as set out in footnote 9 above, confirmation of LLNI's first lien on all of the mineral rights and proceeds set forth in the January 11, 2013 (effective January 1, 2012) Deed of Trust and Security Agreement granted by Julian Lee Bivins, II to Lovell, Lovell, Newsom & Isern, L.L.P.;

b.  Confirmation of LLNI's first lien on all Julian Lee Bivins, II's beneficial interests in and from, and on the distributions to him from the Bivins Trust, which distributions are for bonuses and royalties from the real property covered by Plaintiff's lien.

c.  All other declaratory relief set out in paragraph 21 above.

d.  Damages for breach of contract, suit for debt, and suit on account stated in a sum in excess of the jurisdictional limits of the court.

e.  Damages for conversion of collateral, in a sum in excess of the jurisdictional limits of the Court.

f.  Enforcement and judgment of foreclosure of Plaintiff's lien and security interest in 1) Defendant's interest in the Pioneer Bonus Money, 2) all royalties and bonus paid from, or as a result of, real property and interests described in the November 12, 2010 Mineral Deed, including after acquired title, and 3) all royalties and bonus paid from, or as a result of, real property and interests described in the Correction Mineral Deed, including after-acquired title.

g.  Injunctive relief pursuant to Tex. Civ. Prac. & Rem. Code §31.002 and Tex. Bus. & Comm. Code §§24.008-24.009.

h.  The appointment of a receiver and appropriate turnover orders for all of the Defendant's nonexempt property pursuant to Tex. Civ. Prac. & Rem. Code §31.002.

i.  Prejudgment interest as provided by law.

j.  Attorney's fees.

k.  Post-judgment interest as provided by law.

l.  Costs of suit.

m.  All writs of attachment, sequestration and execution as may be appropriate.

n.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

RINEY & MAYFIELD LLP
   Thomas C. Riney – TBN 16935100
   triney@rineymayfield.com
   W. Heath Hendricks – TBN 24055651
   hhendricks@rineymayfield.com
320 South Polk Street - Suite 600
Maxor Building
Amarillo, Texas 79101
(806) 468-3200; Fax (806) 376-4509


       */s/ Thomas C. Riney*
By_____
       Thomas C. Riney

*ATTORNEYS FOR PLAINTIFF*